**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   WEST COAST HOME BUILDERS, INC.,              No. C 04-02225 SI

9              Plaintiff,                        **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANTS'**
10     v.                                        **MOTION TO DISMISS STATE LAW
                                                 CLAIMS; GRANTING DEFENDANTS'**
11  AVENTIS CROPSCIENCE USA INC., *et al.*,      **MOTION FOR STAY AND STAYING
                                                 ACTION UNTIL SEPTEMBER 30, 2006**
12              Defendants.
                                       /
13

14          On June 9, 2006, the Court heard oral argument on defendants' motion to dismiss state law

15   claims and defendants' motion to stay this action on primary jurisdiction grounds.  After careful

16   consideration of the parties' papers and the arguments of counsel, the Court enters the following order.

17

18                                **BACKGROUND**

19          Plaintiff West Coast Home Builders, Inc. ("West Coast") is a developer and builder of homes

20   in Contra Costa County, California. First Amended Complaint ("FAC") ¶ 49.  West Coast owns a parcel

21   of property (the "Property") near or adjacent to the Contra Costa Sanitary Landfill near Antioch,

22   California (the "CCSL Landfill"). *Id.* at ¶¶ 49-51.  The CCSL Landfill is comprised of (a) the former

23   GBF Landfill (the eastern 63-acre parcel), and (b) the former Pittsburg Landfill (the western 25-acre

24   parcel), both of which were consolidated into (c) an 88-acre solid waste landfill that was operated as the

25   Contra Costa Sanitary Landfill.  *Id.* at ¶ 52.  The CCSL Landfill was used as a disposal area for

26   hazardous materials during the 1960s and 1970s, and for the disposal of municipal waste, including

27   hazardous materials, until approximately 1992. *Id.*

28          West Coast alleges that the CCSL Landfill is the source of groundwater contamination on and

under West Coast's Property.  West Coast's First Amended Complaint requests recovery of response

costs and contribution under CERCLA, 42 U.S.C. § 9601 *et seq.*, declaratory relief under federal law,

and monetary and injunctive relief under state tort law.


**DISCUSSION**

**1.     Motion to Dismiss State Law Claims as Untimely**

**A.     Negligence, negligence per se, ultrahazardous activity, and state law declaratory relief claims**

Defendants GBF Holdings LLC and TRC Companies move to dismiss plaintiff's claims for

negligence, negligence per se, ultrahazardous activity,  and state law declaratory relief on the ground

that they are barred by the three year statute of limitations set forth in California Code of Civil

Procedure Section 338(b).[1]  Defendants contend these claims are time-barred because they accrued no

later than 1993, when the contaminated groundwater traveled under West Coast's property, and West

Coast had actual notice of such contamination no later than 1996.  Due to an earlier tolling agreement

between the parties, the effective filing date of the complaint for statute of limitations purposes is

October 1, 2001.[2]

Plaintiff contends that these claims are not time-barred because it is still unclear whether the

contamination can be abated, and thus these claims have not yet accrued.[3]  Relatedly, plaintiff argues

that its claims are timely because TRC's "last act is its failure to take affirmative steps to mitigate the

nuisance and trespass for which it is responsible."  Opposition at 11:17-18.

The Court concludes that plaintiff's claims for negligence, negligence per se, ultrahazardous

---

[1]  Numerous co-defendants have joined in this motion.

[2]  On October 1, 2001, West Coast filed a related case in this Court, with claims arising from the same groundwater contamination alleged in the current case. *See West Coast Home Builders, Inc. v. Ashland Inc., et al.*, C 01-4029 SI.  The present defendants were originally named in the *Ashland* case before being dismissed without prejudice in exchange for an agreement tolling West Coast's causes of action.

[3]  The Court notes that plaintiff's opposition did not advance this argument with respect to the negligence, negligence per se, ultrahazardous activity, or state law declaratory relief claims.  However, at the June 9, 2006 hearing, plaintiff's counsel stated that, although framed in connection with the nuisance and trespass claims, plaintiff intended to assert the "abatability" theory with regard to all the state law claims.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    activity, and state law declaratory relief are barred by the statute of limitations. *CAMSI IV v. Hunter*

2    *Technology Corporation*, 230 Cal. App. 3d 1525 (1991), is instructive. In *CAMSI IV*, a plaintiff

3    landowner sued a company that had previously owned the land, alleging that the former property owner

4    had discharged volatile organic chemicals onto the property. The plaintiff alleged claims for negligence,

5    negligence per se, and strict liability/ultrahazardous activity. *Id.* at 1532. The Court of Appeal held

6    these claims were time-barred because the complaint alleged that the former property owner, Hunter,

7    had manufactured circuit boards on the property until 1983, and thus "[u]nder the orthodox rule, the

8    three-year limitation period would have commenced no later than 1983 and expired in 1986," two years

9    before the plaintiff filed suit. *Id.* at 1534. The court rejected the plaintiff's argument that its claims did

10   not accrue until a regional water quality control board issued an order in 1987 requiring cleanup of the

11   property:

12       [F]rom the face of the second amended complaint, it is apparent that any harm the
         alleged tortfeasor, Hunter, had done to the property had been completed by no later than
13       1983, and that so far as the complaint reflects the physical aspects of that harm were not
         progressive: The contamination of the soil and groundwater, once and to the extent
14       caused by Hunter, apparently remained constant.

15   *Id.* at 1535.

16       The court also rejected the plaintiff's attempt to invoke the "discovery rule," which postpones

17   commencement of the limitation period until "the plaintiff discovers or should have discovered all facts

18   essential to his cause of action, which is to say when plaintiff either (1) actually discovered his injury

19   and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable

20   diligence." *Id.* at 1536 (internal citations and quotations omitted). The court noted that the complaint

21   alleged that as early as July 1985 the regional water board mandated investigation of the groundwater

22   and soil of the property. "We conclude as a matter of law, from the allegations of the second amended

23   complaint, that as of July 1985 CAMSI IV possessed information sufficient at least to place it on notice

24   of serious contamination problems on the parcel it owned, and from which by exercise of reasonable

25   diligence it could have learned the full extent of the problems and the nature of their source." *Id.* at

26   1538.

27       Here, the complaint alleges that the Landfill accepted waste until 1992. FAC ¶ 52. The

28   complaint further alleges that in September 1987, the Department of Toxic Substances Control

                                                      3

United States District Court

For the Northern District of California

1  ("DTSC") issued an order directing numerous parties to investigate and remediate the groundwater-

2  borne contamination at the Landfill. *Id.* at ¶ 73.  The DTSC order was amended in 1988 and again in

3  July 1993; according to the complaint, the July 1993 Remedial Action Order reported, *inter alia*, that

4  "the groundwater contains levels of hazardous substances in excess of the [maximum contaminant

5  levels]," that the "removal and remedial action is necessary at the Site [Landfill] because there may be

6  an imminent and/or substantial endangerment to the public health or welfare or to the environment."

7  *Id.* at ¶¶ 73-75.

8      Moreover, the record before the Court also shows that plaintiff had actual notice of the

9  groundwater contamination no later than 1996 when West Coast's President Albert Seeno corresponded

10  with DTSC regarding the issue.  On November 13, 1996, Mr. Seeno wrote a letter to the DTSC stating

11  that WCHB owned the Property northwest of the Landfill: "We are the owners of the undeveloped land

12  northwest of [the Landfill]."  Rissier Decl., Ex. R.  Mr. Seeno requested that the DTSC advise him:

13      of the method by which we will be compensated and by which our property will be
        remediated or acquired as a result of the effects from contaminants.  Who will remediate
14      and/or acquire and whether it will be through condemnation, negotiations or otherwise?

15  *Id.* Mr. Seeno also requested that DTSC explain "the method of reimbursement to us for fees and costs

16  we will be obligated to incur for our consultants, attorneys, staff time and related expenses."  *Id.*[4]

17      Thus, just as in *CAMSI IV*, the allegations of the complaint and the DTSC public records show

18  that plaintiff was on notice of the facts giving rise to its claims well before the expiration of the statute

19  of limitations.  Plaintiff's arguments about abatement are misplaced; as discussed *infra*, whether a

20  nuisance can be abated is relevant to determining whether a continuing nuisance or trespass claim is

21  timely. *See CAMSI IV*, 230 Cal. App. 3d at 1539 (noting that, "in appropriate circumstances [a nuisance

22  theory] would be subject to more favorable limitations rules").  However, these arguments are irrelevant

23  to whether plaintiff's complaint alleges timely negligence, negligence per se, ultrahazardous activity,

24  or state law declaratory relief claims.

25

26

27      [4] The Court takes judicial notice of this document and of all other documents submitted by
    defendants that are part of the public files of the DTSC.  The Court does not take judicial notice of the
28  news articles submitted by defendants.

4

**United States District Court**
For the Northern District of California

### B.      Nuisance and trespass claims

Defendants also contend that although plaintiff labels its nuisance and trespass claims as "continuing," the alleged nuisance and trespass are actually "permanent," and thus these claims are also subject to the three year statute of limitations.  Plaintiff has plead both of these claims as "continuing," which would make the claims timely.  *See* FAC ¶¶ 103-110 (Fourth Cause of Action; Private Continuing Nuisance); ¶¶ 111-17 (Fifth Cause of Action; Continuing Trespass); *see also Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1143 (1991) ("*Mangini I*")  ("[W]here a private citizen sues for damages from a permanent nuisance, the statute of limitations begins to run upon the creation of the nuisance.  Where a continuing nuisance is alleged, every continuation of the nuisance gives rise to a separate claim for damages caused by the nuisance.").

Citing *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087 (1996) ("*Mangini III*"), defendants argue that plaintiff has failed to state claims for continuing nuisance and trespass because the complaint does not plead that cleanup of the groundwater contamination is possible for a reasonable cost.  Contrary to defendants' assertions, the complaint does allege that the groundwater contamination is abatable.  For example, Paragraph 79 alleges:

> The remedial actions required by the 1997 Remedial Action Plan are reasonable and feasible; however as of the filing of this action, Defendants have failed to implement the requirements of the 1997 Remedial Action Plan and have failed to take adequate or appropriate steps to remediate and abate the condition of pollution, nuisance and trespass created on and under Plaintiff's Property.

FAC ¶ 79.

Defendants' reliance on *Mangini III* is misplaced.  In *Mangini III*, the California Supreme Court held that a trial court should have granted a defendant judgment notwithstanding the verdict on continuing nuisance and trespass claims because the plaintiff had failed to produce any substantial evidence at trial that the nuisance was abatable.  *See Mangini III*, 12 Cal. 4th at 1097-98.  Here, in ruling on defendant's motion to dismiss, the Court's review is limited to the allegations of the complaint, which the Court must take as true.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996) (stating standard of review for Rule 12(b)(6) motion).

Defendants also contend that, notwithstanding the language of the complaint, plaintiff is judicially estopped from characterizing these claims as "continuing" because West Coast pursued and

**United States District Court**
For the Northern District of California

1   offered testimony supporting "permanent" nuisance and trespass claims in the related *Ashland* case.

2   Defendants base their judicial estoppel argument on the following : (1) West Coast's description of its

3   nuisance and trespass claims as "permanent" in an opposition to a motion for summary judgment in the

4   *Ashland* case; and (2) the under seal deposition testimony of West Coast representative Marty

5   Rosenzweig, who testified that groundwater contamination at the Property could not be removed, and

6   therefore was "permanent."[5]

7       "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions,

8   precludes a party from gaining an advantage by taking one position, and then seeking a second

9   advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94

10  F.3d 597, 600 (9th Cir. 1996). Judicial estoppel is an equitable doctrine that the Court invokes at its

11  discretion. *Id.* at 601. Courts have applied the doctrine when a party has advanced inconsistent

12  positions before different courts. *See Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (party

13  advocated "directly contrary" positions in state and federal court).

14      Here, the Court concludes that the record does not warrant application of judicial estoppel. The

15  summary judgment opposition filed in *Ashland* states that West Coast was pursuing both continuing *and*

16  permanent nuisance and trespass claims in the *Ashland* case. West Coast argued that its permanent

17  nuisance and trespass claims were not untimely because "[u]ntil West Coast knows for certain that the

18  contamination *cannot* be remediated, it cannot know whether it had an actionable claim for *permanent*

19  nuisance and trespass." *Id.* at 3 (emphasis in original). West Coast also argued that it could maintain

20  its claims for continuing nuisance and trespass because under the DTSC's Remedial Action Plan,

21  "abatement remains feasible and in fact is mandated by DTSC." *Id.* at 1. Thus, there is no inconsistency

22  between plaintiff's position in *Ashland* and the instant case.

23      Defendants' reliance on Mr. Rosenzweig's deposition testimony from the *Ashland* case is

24  similarly unavailing. According to defendants, the testimony provided by Mr. Rosenzweig, West

25  Coast's Rule 30(b)(6) designee on damages, was consistent with a permanent nuisance theory of

26

27      [5] The Court takes judicial notice of these documents. Plaintiff contends that the Court should not take judicial notice of Mr. Rosenzweig's deposition testimony because that testimony was filed

28  under seal in the *Ashland* case. However, in light of the fact that the instant litigation is, in effect, "part two" of the *Ashland* case, the Court takes judicial notice of Mr. Rosenzweig's deposition testimony.

1    damages. Defendants argue that Mr. Rosenzweig's testimony is a binding admission that the nuisance

2    and trespass are not abatable, and further that West Coast's "permanent nuisance and trespass theory

3    may have given WCHB a larger damages claim and greater leverage in the settlement negotiations with

4    the Garaventa Defendants." Reply at 7. Here, it is not clear that Mr. Rosenzweig's testimony regarding

5    damages is completely inconsistent with a continuing nuisance theory. More importantly, *Ashland*

6    settled, and the Court did not make any findings adopting West Coast's purportedly inconsistent

7    position.

8         Accordingly, for the foregoing reasons the Court GRANTS IN PART AND DENIES IN PART

9    defendants' motion to dismiss, and holds that plaintiff's negligence, negligence per se, ultrahazardous

10   activity and state law declaratory relief claims are untimely and the continuing nuisance and trespass

11   claims are timely.

12

13   **2.       Motion to Stay Action Based on Primary Jurisdiction**

14        Defendants GBF Holdings and TRC Companies move to stay this action on primary jurisdiction

15   grounds based upon proceedings currently taking place before the California Department of Toxic

16   Substances Control ("DTSC"). According to papers submitted by the parties, West Coast is currently

17   in the midst of seeking a "No Further Action" ("NFA") letter from the DTSC. West Coast needs an

18   NFA letter in order to develop the Property for residential housing. As set forth in the parties'

19   December 7, 2005 stipulation and June 2, 2006 joint case management conference statement, the parties

20   have been cooperating with respect to this regulatory process, and have hired a consultant and submitted

21   a proposed work plan to the DTSC. The CMC statement states that the parties expect that testing will

22   occur under the work plan during August and September of 2006.

23        Defendants contend that there are four possible outcomes of the investigation that West Coast

24   will be conducting on the Property: (1) oily soil from Chevron's former operations will need to be

25   remediated; (2) groundwater contamination as a result of the Landfill will need to be remediated; (3)

26   both oily soil and groundwater will need to be remediated; or (4) no remediation will be necessary and

27   DTSC will issue an NFA letter at the conclusion of the investigation. Defendants contend that which

28   of these four outcomes occurs is of central importance to this lawsuit, and thus that judicial economy

United States District Court
For the Northern District of California

7

1   and the policies underlying the primary jurisdiction doctrine weigh in favor of a stay until the DTSC

2   proceedings are completed.

3         The Court agrees, and finds that a limited stay through September 30, 2006 is appropriate. The

4   two primary reasons expressed by plaintiff for opposing the stay – that a stay will be of indefinite

5   duration and that the parties need the Court's active involvement to facilitate resolution – are not

6   implicated by such a limited stay. A stay through September 30, 2006 will allow the parties to proceed

7   with the work plan investigation, the results of which may significantly affect the complexion of this

8   case. Accordingly, the Court GRANTS defendants' motion for a stay and STAYS this action through

9   September 30, 2006.

10

11                              **CONCLUSION**

12         For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and

13   DENIES IN PART defendants' motion to dismiss, GRANTS defendants' motion for a stay and STAYS

14   this action through September 30, 2006. (Docket No. 78). The Court also GRANTS IN PART and

15   DENIES IN PART defendants' request for judicial notice. (Docket No. 36).

16         **IT IS SO ORDERED.**

17

18   Dated: July 6, 2006

19                                          SUSAN ILLSTON
                                            United States District Judge

20

21

22

23

24

25

26

27

28

*United States District Court*
For the Northern District of California